### F. A. BLACK ET AL. v. R. B. POOL ET AL.

#### No. 1276.   Decided February 23, 1904.

**1.—Constitutional Law—Qualified Voter—Payment of Poll Tax.**

Voters at a local option election in Milam County on May 30, 1903, who had not paid their poll tax prior to February 1st were disqualified under section 2, article 6, of the Constitution as amended under resolution of the Twenty-seventh Legislature, though the Act of the Twenty-eighth Legislature, taking effect March 30, 1903, extended the time for payment of taxes in that county until October 1, 1903.   (Pp. 336, 337.)

**2.—Same.**

The act extending the time for payment of taxes in Milam County to October 1, 1903 (Laws 28th Leg., p. 63), did not by its terms relieve the disqualification of voters failing to pay their poll tax by February 1st of that year, and if it had attempted to do so would have been unconstitutional. (P. 337.)

**3.—Contested Election—Conspiracy.**

It was proper for the commissioners court to give instructions to election officers as to the disqualification of voters not paying their poll tax; and an allegation, in a contest of the election, that they had fraudulently conspired to prevent a fair election by giving such instructions was without effect.   (P. 337.)

**4.—Contested Election—Case Distinguished.**

The case of Stinson v. Gardner (2 Texas Law Journal, 672) does not hold that it was improper for election officers to require voters to produce their poll tax receipts, and whether it was so or not will not be decided in a case where the number alleged to have been denied a vote by such ruling was not sufficient to change the result of the election.   (Pp. 337, 338.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Milam County.

*Henderson, Morrison & Freeman,* for appellants.—The only question, it seems to us, that could possibly arise on a consideration of this act would be, was it the intention of the Legislature and could such intention be made effective, to remove or obviate the constitutional requirement that the poll tax should have been paid before the 1st day of February, and which day had occurred before the date on which the act in question was enacted?   We answer this question in the affirmative, and we think such answer becomes manifest upon a consideration of the principles of law applicable thereto.   The Constitution fixes no limit as to the time when the Legislature may pass such an act, and the relief from the payment, or an extension of payment, carries with it necessarily, by unavoidable implication, a remission or extension of all the consequences of nonpayment; otherwise it would be denying to the Legislature what the Constitution had especially granted and had not inhibited.

Our contention is that the election was void and should be so declared.   (1) Because it was not essential that a voter in Milam County should have paid his poll tax in order to be privileged to cast his ballot and have it counted in such election.   (2) That under the facts alleged it was not necessary for a voter to have gone to the polls and actually offered to vote, because it was shown that he would not have been allowed to vote if he had gone, and it was not necessary that he should offer to

334 TEXAS REPORTS. [February,

do a thing which he had been notified, warned and threatened beforehand that he would not be permitted to do. (3) That the published notices threatening to prosecute those who offered to vote when they had not paid their poll tax were sufficient to and did actually prevent voters from presenting themselves at the polls. (4) That this conspiracy being entered into by the officers of election on the day of election and by them actually carried out and executed, became their own fraud from the beginning of the conspiracy. (5) That any action on the part of the officers in charge of the election which had the effect to disfranchise over two-thirds of the legal voters who were entitled to participate in such election renders the election unfair and unlawful; let their action be fraudulent or not in intention, it was so in law. (6) That in a contest of an election of this kind it is not incumbent upon the contestees to give the names of the voters who would have voted against prohibition when it is shown that this can not be done and they are more than 4000 in number. (7) Because when it is shown that two-thirds of these 4000 voters who were excluded would have voted against prohibition, it is shown that the action of the officers in charge of the election, not only might have materially changed the result, but that it did actually change it. (8) Because in a contest of this character it is not necessary to show that the action of the officers of election in refusing to permit qualified voters to vote did actually change the result, but it is only necessary to show that it might have changed it, and that it is not necessary to prove this fact to a certainty, but only within the realm of probabilities.

*W. W. Chambers, R. B. Pool,* and *Hefly, McBride & Watson,* for appellees.—Plaintiffs' pleadings setting up as a ground for contest of the election the denial of the right to vote to all persons who had not paid their poll tax prior to February 1st shows upon its face that such persons were not qualified voters under the Constitution and laws of Texas, and hence said allegations constituted no cause of action for setting aside the election, and the court rightfully sustained defendants' special exception to said allegation.

Plaintiffs' pleadings not having named or given the number of the voters who were alleged to have been deterred and prevented from voting at the election, and failed to allege that said voters actually applied to the officers holding the election on the day of the election and were denied the right to vote, the court rightfully sustained defendants' special exception to plaintiffs' pleadings failing to allege such facts. Ewing v. Duncan, 81 Texas, 237.

BROWN, ASSOCIATE JUSTICE.—We make the following condensed statement of the contents of the original and amended petitions in the above styled cause as certified by the Court of Civil Appeals. The contents of the original and the first amended original petition are substantially the same with the exception that in the amended petition the

same facts as were charged in the original as grounds for contesting the election are alleged, and in addition, that the acts so done by the defendants were done "fraudulently" and "for the fraudulent purpose" of preventing a fair and impartial election in the said county, and averred that the local option law is unconstitutional.

The allegations of the amended petition show that on May 11, 1903, a petition signed by more than 250 legal voters of Milam County was presented to the Commissioners Court of the said county asking that body to order a local option election for Milam County, and on the 12th day of that month the Commissioners Court ordered the election to be held on the 30th day of May, 1903. The election was held and returns made as required by law; the Commissioners Court entered an order declaring that the election had resulted in favor of prohibition by 210 majority, and ordering it to be published as the law required; and the County Judge selected the Cameron Herald, a weekly newspaper published in that county, to make the publications. On the 26th day of June, 1903, F. A. Black, W. A. Alcorn and Eli Peoples, citizens, taxpayers and qualified voters of Milam County, filed in the District Court of the said county their petition to contest the said election, and to enjoin the publication of the order of the Commissioners Court. It was alleged that the contestants were engaged in retail of spirituous liquors in Milam County under license duly and regularly issued to them by the county officials and by the municipal authorities, they having paid all the license taxes required by law and given bond as the law required them to do. It was further alleged that the said parties held license as retail liquor dealers from the government of the United States.

The petition named as defendants, or contestees, R. B. Pool, county judge, Porter Stevens, P. V. Bodiford, W. C. Ross and W. C. Weise, county commissioners of Milam County, and O. F. McAnnaly, the editor and publisher of the Cameron Herald.

For grounds of contest of the election the petition charged that for the fraudulent purpose of preventing a fair and impartial election on the 30th day of May, 1903, and with the fraudulent intent to deter and prevent the voters of Milam County from voting at the said election, the county judge and the county commissioners did conspire and confederate together to announce and declare, to publish and have delivered to each officer appointed to hold the election certain rulings and opinions to the effect that each voter of Milam County would be required to present his poll tax receipt, or make oath that it had been lost, and that he had paid his poll tax prior to February 1, 1903, or said judge should not permit such voter to cast his ballot. It is also alleged that the officers of the election at the different precincts in the county entered into the said conspiracy, and that the said opinions, orders and publications having been delivered to each of the said officers of election and circulated among the people at large in the county, had the effect to deter and prevent many of the voters of the said county from presenting themselves at the different places of elections to exercise their privilege of voting. The

petition names six persons who presented themselves and claimed the right to deposit their ballots, without presenting their receipts for poll tax, who were denied the privilege, and states that there were others but does not give the names.

The petition also alleges that with like fraudulent purpose and intent the county judge and the commissioners did combine and confederate together to issue, publish and distribute to each officer appointed to hold the election and to the people at large rulings, opinions and declarations to the effect that no person would be allowed to vote at said election unless he had paid his poll tax prior to the 1st day of February, 1903, and said rulings, orders and publications were made, distributed and delivered to the said officers of election and to the people at large with the unlawful and fraudulent purpose of deterring the voters of Milam County from appearing at the polls on said election day and casting their ballots. It is alleged that there were about 8000 voters in Milam County, and that about 3700 registered and of these 3384 voted at said election. The petition charges that a great number of persons legally qualified to vote were deterred from casting their ballots at said election, to wit, about 1500, and if the said orders, rules and regulations had not been so distributed a large number of those who did not appear would have voted at said election against prohibition and the result would have been different.

The Twenty-eighth Legislature passed an act entitled, "An act to extend the time of payment of the State and county taxes for the year 1902 in the counties of Milam, Caldwell and Colorado until October 1, 1903." The first section of the said act reads as follows: "That the time for the collection and payment of all county and State tax in the counties of Milam, Caldwell and Colorado for the year 1902 be extended until October 1, 1903." The act took effect on March 30, 1903.

The trial court sustained a general demurrer and special exceptions to the petition, and the case was dismissed. The Court of Civil Appeals propounds the following questions to this court:

"1. Does the amended petition set up a new cause of action?

"2. Was it essential to the qualification of a voter at the election in question, that he should have paid his poll tax on or prior to the 1st day of February, 1903?

"3. Are the facts alleged in the original petition or amended petition or both, wherein a conspiracy is alleged to prevent and deter voters from voting at the election in question, grounds sufficient upon which to base the contest in question?

"4. Did the trial court err in sustaining the general and special demurrers to plaintiffs' pleadings?"

We answer the second question in the affirmative and the third question in the negative.

Section 2 of article 6 of the Constitution of this State, as amended by resolution adopted by the Twenty-seventh Legislature at the regular session thereof, contains this proviso: "That any voter who is subject

to pay a poll tax under the laws of the State of Texas shall have paid said tax before he offers to vote at any election in this State and hold a receipt showing his poll tax paid before the 1st day of February next preceding such election.   Or if said voter shall have lost or misplaced said tax receipt, he shall be entitled to vote upon making affidavit before any officer authorized to administer oaths that such tax receipt has been lost.   Such affidavit shall be made in writing and left with the judge of the election, and this provision of the Constitution shall be self-enacting without the necessity of further legislation."   The requirements of this section of the Constitution are so plain as to preclude construction.   It is clear that it was intended to prescribe as a condition precedent to the exercise of the elective franchise that all persons subject under the Constitution and laws to the payment of a poll tax should make payment thereof before the 1st day of February next preceding the election.   It is claimed, however, that the act of the Twenty-eighth Legislature, by which the collection of taxes in Milam County was extended until the 1st day of October, 1903, relieved all voters of Milam County of the effect of a failure to comply with the provisions of the Constitution, and that in that county all citizens otherwise qualified were entitled to vote whether they had paid that tax or not.   If the Legislature had the power to relieve from a constitutional disqualification resulting from the failure to pay taxes as required, it did not attempt to do so; there is nothing in the act which would justify such construction. But we are of the opinion that if the Legislature had attempted to relieve the voter of the disqualification by that act, passed after the time had elapsed for the payment of the tax, it would have been in direct conflict with the provisions of the Constitution.

It being true that a citizen of Milam County, who had not paid his poll tax prior to the 1st day of February, 1903, was not entitled to cast his ballot in the election for local option in that county on the 30th day of May, 1903, it follows that the alleged combination and conspiracy to distribute information of the law which should govern the officers in conducting the election could not constitute a cause for contesting the election, nor could it have had the effect to deter any persons, lawfully qualified to vote at said election, from presenting themselves and casting their ballots.   The allegation of a fraudulent intention to prevent a fair election can have no effect, since the acts done were lawful.   A short time had elapsed since the adoption of the amendment to the Constitution and the officers who were to hold the election and the people were not informed of its requirements; therefore it was not improper for the members of the Commissioners Court to give such instructions to the officers of the election as would enable them to conduct it in accordance with the Constitution.

In the case of Stinson v. Gardner, 9 Texas Ct. Rep., 171, we held that the fact that the officers in charge of the election did not require the voter to produce his receipt for poll taxes did not constitute a ground

for contesting the election. It does not follow, however, that officers in charge of such election might not have required the presentation of receipts for poll taxes; but it is unnecessary for us to decide that question, since the petition alleges that six qualified voters presented themselves and were denied the privilege of voting at the election because they failed to produce their tax receipts at the time. If the six had voted against prohibition it would not have changed the result, therefore it is immaterial in this case.

In view of our answers to the second and third questions, 1 and 4 are immaterial and will not be answered.